UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CR-159 |
| | ) | (VARLAN/SHIRLEY) |
| KEVIN TRENT BUSSELL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal action is before the Court on the Report and Recommendation, entered on August 10, 2011, by United States Magistrate Judge C. Clifford Shirley, Jr. (the "R&R") [Doc. 328]. The defendant, Kevin Trent Bussell, is charged in an indictment with conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, two firearm offenses, and money laundering [Doc. 3].

The defendant filed several motions to suppress, including the one underlying the R&R—Motion to Suppress No. 6 [Doc. 210]—which requests that the Court suppress all evidence obtained from the November 9, 2010, search of the defendant's vehicle during a traffic stop. The United States filed a response in opposition [Doc. 224]. On May 20, 2011, Magistrate Judge Shirley held a motion hearing, during which he heard evidence and arguments on the defendant's motion. The next day, the magistrate judge took the motion to suppress, the testimony, and the parties' arguments under advisement.

In the R&R, Magistrate Judge Shirley finds that the warrantless stop and search of the defendant's vehicle did not violate the Fourth Amendment. Magistrate Judge Shirley accordingly recommends that the defendant's motion to suppress be denied. The defendant filed an appeal of the R&R, which the Court construes as objections to the R&R [Doc. 331], and the government filed a response to the objections [Doc. 333].

**I.    Background Facts[1]**

Prior to November 10, 2010, Trooper Kelly Smith ("Trooper Smith"), of the Tennessee Highway Patrol, was contacted by Special Agent Bethel Poston ("Agent Poston") with the Drug Enforcement Agency ("DEA") [Doc. 328]. Agent Poston informed Trooper Smith that he had received information through a wiretap investigation of the defendant that the defendant would be transporting a large sum of United States currency en route to Florida to purchase prescription medications [*Id.*]. Agent Poston provided Trooper Smith with information about the defendant's vehicle, specifically, a description of the vehicle and its Tennessee registration [*Id.*].

After speaking with Agent Poston, Trooper Smith was sent to Loudon County to intercept the defendant's vehicle [*Id.*]. Trooper Smith positioned his vehicle in the median of Interstate 75 at mile marker 76 in Loudon County [*Id.*]. When the vehicle meeting Agent

---

[1]At the motion hearing, the government presented the testimony of Trooper Kelly Smith and Officer Jonathan Yates. The magistrate judge's findings of fact are based on the testimony of these two witnesses as well as the exhibits presented during the hearing, including two cruiser videos [*See* Doc. 328]. These background facts are a summary of the magistrate judge's findings of fact. In his objections, the defendant objects to portions of the magistrate judge's findings of fact in connection with his legal analysis and conclusions. The Court notes and considers such objections in Section IV.

2

Poston's description arrived at Trooper Smith's location at approximately midnight on November 10, 2010, Trooper Smith observed the vehicle speeding, an observation he made with his radar device [*Id.*]. Determining the speed of the defendant's vehicle was 73 miles per hour in a 65 miles per hour zone, a violation of Tennessee state law, Trooper Smith initiated a stop of the defendant's vehicle [*Id.*].

Trooper Smith observed that the defendant was driving the vehicle, a white male in the right front seat, a white male in the left rear seat, a small infant in a car seat in the middle rear seat, and a white female in the right rear seat [*Id.*]. Upon approaching the vehicle, Trooper Smith announced who he was and the reason for the stop, and the defendant stated that he was the owner of the vehicle [*Id.*].

According to Trooper Smith, the female passenger was "slumped over and appeared to be unconscious" [*Id.*]. Trooper Smith did not believe, as a result of his experience and training, that she was sleeping because she was slumped forward, with her head down to the right, and she had difficulty waking up at Trooper Smith's request [*Id.*]. Rather, he believed she was intoxicated by drugs, as she did not respond quickly and he did not smell any odor of or observe alcohol [*Id.*]. Trooper Smith testified that the circumstances raised several questions regarding her safety and his suspicions were aroused [*Id.*].

Trooper Smith asked for the defendant's driver's license, registration, and proof of insurance, which Trooper Smith claims the defendant did not provide quickly [*Id.*]. Trooper Smith also requested, given his observation of the female passenger, the identification of all passengers in the car [*Id.*]. The defendant was very talkative and Trooper Smith considered

him overly friendly, which heightened his suspicions [*Id.*]. The defendant took several minutes, longer than most during a normal traffic stop, to locate his license, registration, and proof of insurance [*Id.*]. He also fumbled through the paperwork, which Trooper Smith stated could be a indicator of intoxication [*Id.*].

After obtaining the requested documentation, Trooper Smith asked the defendant to step out of the vehicle and to the front side of his patrol car so that he could keep an eye on the defendant and the passengers while he checked the individuals through the NCIC files and for warrants [*Id.*]. Trooper Smith ran the checks on all four individuals, which took several minutes [*Id.*]. He also wrote a warning citation for speeding [*Id.*]. When he was finished, he exited his patrol car and began a conversation with the defendant, who was willing to speak with Trooper Smith [*Id.*].

Trooper Smith informed the defendant that he was going to check on the female passenger and the reasons for doing so [*Id.*]. He also asked the defendant for his travel itinerary [*Id.*]. The defendant informed Trooper Smith that he was on his way to see his uncle[2] in Georgia and then he was traveling to Florida [*Id.*]. The defendant also informed Trooper Smith that the visit was a surprise [*Id.*]. Trooper Smith thought it was suspicious that the defendant was traveling to surprise his uncle given the time of night [*Id.*]. Around

---

[2]Trooper Smith testified at the hearing that the defendant referenced visiting his grandfather during the stop; however, the video played during the hearing indicates that the defendant referenced visiting his uncle.

4

this time, dispatch contacted Trooper Smith to inform him that everything checked out on the four subjects [*Id.*].

Trooper Smith inquired about the identity of the female passenger and then approached the vehicle to speak with her [*Id.*]. Trooper Smith asked her to step out of the vehicle, but she did not comply immediately [*Id.*]. After approximately one minute, during which time Trooper Smith observed the female passenger speaking with the passenger occupying the right front seat of the vehicle, she stepped out of the vehicle [*Id.*]. During the time she remained in the vehicle, the passengers rehearsed their travel itinerary and the female passenger asked if they were on their way to South Carolina, a conversation Trooper Smith overheard because the window was rolled down and he put his head at the window [*Id.*]. The passengers did not notice Trooper Smith, which Trooper Smith found strange because his head was almost inside the vehicle [*Id.*]. Trooper Smith asked about the passengers' conversation, but the female passenger did not respond and kept her eyes forward [*Id.*].

When the female passenger exited the vehicle, Trooper Smith began conversing with her [*Id.*]. He asked for her travel itinerary, and she stated she was traveling to South Carolina to buy truck parts [*Id.*]. As this itinerary conflicted with the defendant's itinerary, Trooper Smith asked the right front passenger to exit the vehicle [*Id.*]. He too informed Trooper Smith that he was on his way to South Carolina to buy truck parts [*Id.*]. Likewise, the left rear passenger informed Trooper Smith that he was on his way to buy truck parts in South

5

Carolina [*Id.*]. Trooper Smith testified that, at this point in the stop, his primary concern had shifted from the safety of the female passenger to whether criminal activity was afoot [*Id.*].

Trooper Smith returned to the defendant and then requested that the canine on the scene perform a sniff of the vehicle[3] [*Id.*]. During the sniff of the vehicle, Trooper Smith spoke with the defendant, who was willing to speak with the trooper [*Id.*].

The result of the canine sniff was positive, as the dog, Bear, pawed the passenger side door of the vehicle [*Id.*]. Trooper Smith asked for, and obtained, without hesitation, verbal and written consent from the defendant to search the vehicle [*Id.*]. When Trooper Smith obtained the defendant's consent to search, the defendant was standing outside the trooper's patrol car and was not handcuffed [*Id.*]. The consent form was signed in the trooper's presence [*Id.*].

Trooper Smith also obtained the verbal consent of all the passengers, except for the infant, to search the vehicle [*Id.*]. As Trooper Smith was asking the male passenger who was occupying the backseat whether prescription medications, drugs, or money were present in the vehicle, the passenger's knees buckled and he almost fainted [*Id.*].

Trooper Smith personally assisted with the search of the defendant's vehicle [*Id.*]. Large sums of money were recovered from the console and in different luggage bags in the

---

[3]The canine was on the scene with Officer Jonathan Yates, his handler, who had been contacted by Officer Greg Roberts of the Tennessee Highway Patrol on November 8, 2010, to assist in the deployment of his drug dog in connection with an investigation [Doc. 328].

bed of the truck [*Id.*]. In addition, paperwork and business cards associated with the purchase of prescription pain medication were found in the vehicle [*Id.*].

## II. The R&R

The defendant argued that the evidence obtained from the search of his vehicle should be suppressed because the search of his vehicle violated his constitutional rights [Doc. 328]. More particularly, the defendant argued that the officer prolonged the traffic stop and converted the detention into a drug investigation without sufficient reasonable suspicion or probable cause [*Id.*].

Magistrate Judge Shirley makes four primary findings regarding the defendant's motion to suppress: (1) that there was probable cause to initiate a traffic stop; (2) that there was reasonable suspicion to further detain the defendant and the passengers of the vehicle after the purpose of the stop was complete; (3) that the money recovered as a result of the warrantless search did not violate the Fourth Amendment because the defendant consented to the search and the search did not exceed or extend the scope of the traffic stop; and (4) that the officers had probable cause to search the defendant's vehicle as a result of the canine's sniff of the defendant's vehicle [*Id.*].

Recognizing that, if an officer has probable cause to believe a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment, Magistrate Judge Shirley notes that the probable cause standard does not require that Trooper Smith witnessed the traffic violation beyond a reasonable doubt or by clear or convincing evidence; rather, it requires reasonable grounds for belief supported by

7

less than prima facie proof but more than mere suspicion [*Id.* (citations omitted)]. In light of Trooper Smith's testimony that he determined the defendant's vehicle was traveling 73 miles per hour in a 65 mile per hour zone, a determination based upon his observation of the vehicle, his training and experience, and the use of his radar detection device, the magistrate judge finds that Trooper Smith had reasonable grounds to believe there was a substantial chance that the defendant was speeding [*Id.*]. Thus, he finds there was probable cause for initiating the stop of the defendant's vehicle and no Fourth Amendment violation [*Id.*].

Regarding the duration of the traffic stop, Magistrate Judge Shirley recognizes an officer may not "further detain [a lawfully stopped vehicle] or its passengers unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention" [*Id.* (citing *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006)]. Reviewing the totality of the circumstances, he finds that reasonable suspicion existed to justify further detention of the defendant and the other passengers of the vehicle in order to investigate whether criminal activity was afoot [*Id.*].

First, the magistrate judge defines the proper scope and duration of the initial traffic stop [*Id.* (citation omitted)]. He finds that the stop occurred at 12:12 a.m., and that Trooper Smith obtained the defendant's license, registration, and proof of insurance at approximately 12:17 a.m. [*Id.*]. He then ran a records check on the defendant and the other passengers of the vehicle [*Id.*]. At approximately 12:29 a.m., Trooper Smith exited the vehicle, asked the defendant for his travel itinerary, and informed the defendant that he was going to check on the female passenger [*Id.*]. Shortly thereafter, a dispatcher informed Trooper Smith of the

8

results of the record check [*Id.*]. Magistrate Judge Shirley concludes that, at this point, the purpose of the traffic stop ended [*Id.*]. Thus, reasonable suspicion was required for Trooper Smith to further detain the defendant and the other passengers of the vehicle [*Id.*].

In determining that reasonable suspicion existed, Magistrate Judge Shirley relies upon "five circumstances" [*Id.*]. The first is that Trooper Smith knew that the defendant and his vehicle were the subject of a federal wiretap investigation [*Id.*]. In support, he cites *United States v. Torres-Ramos*, 536 F.3d 542, 553 (6th Cir. 2008), which found that the vehicle's owner being the "subject of Title III wiretap" was a significant factor in establishing "the requisite reasonable suspicion that the defendants were involved in the transportation of drugs" [*Id.*].

The second circumstance is that Trooper Smith testified the defendant was talkative and overly friendly during the stop, which caused him to become suspicious [*Id.*]. The magistrate judge cites *United States v. Jimenez*, No. 1:08-CR-101, 2009 WL 2905933, at *14 (E.D. Tenn. Sept. 2, 2009), where the court found the defendant's "over talkativeness" to be a factor when considering whether the totality of the circumstances supported reasonable suspicion for the defendant's continued detention [*Id.*].

The third circumstance is that Trooper Smith testified that the defendant took longer than usual to locate his driver's license, registration, and proof of insurance [*Id.*]. Specifically, he testified that the defendant fumbled through his paperwork, attempting to locate the requested documents, which Trooper Smith testified is an indicator of intoxication [*Id.*].

9

The fourth circumstance is that, while waiting for the defendant to locate his documentation, Trooper Smith observed that the female passenger was "slumped over," had difficulty becoming responsive, was not speaking reasonably, and appeared intoxicated [*Id.*]. Trooper Smith was concerned for the female's safety as she was traveling with three adult males at a late hour [*Id.*].

The final circumstance is that Trooper Smith became more suspicious when the defendant explained that he was stopping in Georgia to see his uncle, given that the stop occurred after midnight [*Id.*]. In support, the magistrate judge cites *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997), which found that "unusual travel plans may provide an indicia of reasonable suspicion" [*Id.*].

In addition, Magistrate Judge Shirley points out that Trooper Smith, upon returning to the defendant's vehicle to question the female passenger, learned additional facts that justified the expansion of the detention beyond its original scope [*Id.* (citing *United States v. Hill*, 195 F.3d 258, 269–70 (6th Cir. 1999); *Torres-Ramos*, 536 F.3d at 553)]. Trooper Smith testified that the female passenger took a couple of minutes to exit the vehicle, and during that time, she rehearsed her travel itinerary with her co-passengers [*Id.*]. He also testified that, when she exited the vehicle, she informed Trooper Smith that the vehicle was en route to South Carolina to buy truck parts, a statement Trooper Smith found suspect because the itinerary was significantly different from the defendant's travel itinerary and because the vehicle was stopped southbound on Interstate 75, which does not provide a direct route to South Carolina [*Id.*]. He further testified that another passenger indicated that they

were en route to South Carolina to buy truck parts [*Id.*].[4] Thus, the magistrate judge finds there was reasonable suspicion to further detain the defendant and the other passengers of the vehicle after the purpose of the traffic stop was complete [*Id.*].

With respect to the search of the defendant's vehicle, Magistrate Judge Shirley concludes that the search was justified as a result of the defendant's valid consent to search [*Id.*]. Recognizing that consent is an exception to the warrant requirement, so long as the consent is "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion," and because he found that the detention of the defendant was lawful, the magistrate judge finds that the defendant's consent to search was lawfully obtained by Trooper Smith [*Id.* (citations omitted)]. He bases his finding on the testimony of Trooper Smith, who obtained the defendant's consent while the defendant was standing unhandcuffed outside of the trooper's patrol car [*Id.*]. Trooper Smith also testified that the defendant signed the consent form in the trooper's presence without hesitation [*Id.*]. Further, the magistrate judge notes that the defendant did not dispute that he gave consent to search his vehicle, nor did he present any evidence at the hearing that suggested the consent was invalid [*Id.*]. Accordingly, he finds the government showed by a preponderance of the evidence that the alleged consent was given by the defendant, which justified the warrantless search, and that such search did not unlawfully exceed or extend the scope of the traffic stop [*Id.*]. The recovery of the money as a result, therefore, did not violate the Fourth Amendment [*Id.*].

---

[4]The magistrate judge also considers the nervous behavior of the passenger who almost fainted, but affords it lesser significance [*Id.* (citing *Torres-Ramos*, 536 F.3d at 553)].

Alternatively, Magistrate Judge Shirley finds the canine's sniff of the defendant's vehicle was appropriate and provided an independent basis for the search of the vehicle [*Id.*]. In support of this conclusion, the magistrate judge notes that Officer Yates was lawfully present on an interstate conducting a criminal investigation [*Id.*]. He also finds unavailing the defendant's argument that Bear is unreliable because Officer Yates testified that Bear is a trained drug detection dog who alerts by either scratching, biting, or barking at the source of the odor of narcotics [*Id.*]. With respect to the defendant's vehicle, Officer Yates testified that Bear alerted by scratching both the driver and passenger door [*Id.*]. The magistrate judge finds, therefore, that, as a result of Bear's alert, there was probable cause to believe there were controlled substances in the defendant's vehicle, which provided the probable cause to search the entire vehicle and all containers [*Id.*].

### III. Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which defendant has objected. In doing so, the Court has carefully considered the R&R [Doc. 328], the parties' underlying and supporting briefs [Docs. 210, 224], the defendant's objections [Doc. 331], and the government's response to those objections [Doc. 333], all in light of the relevant law. For the reasons set forth herein, the Court will overrule the defendant's objections [Doc. 331], accept in whole the R&R [Doc. 328], and deny the defendant's motion to suppress [Doc. 210].

## IV. The Defendant's Objections to the R&R

As a general matter, the defendant reiterates that "the law enforcement officer stopping the vehicle transformed a legitimate, reasonable stop into a violation of [the defendant's] Fourth Amendment Rights by detaining him and his vehicle beyond the time necessary to complete the issuance of a speeding violation" [Doc. 331 (citation omitted)]. He also "takes issue" with three conclusions of the magistrate judge: that there "was a reasonable basis for detaining the defendant, beyond the time required to issue a traffic citation for speeding, which allowed the officer time to get a drug dog on the scene and obtain consent to search the vehicle"; that the "consent to search was voluntary and constitutional"; and that the "drug dog's positive alert supplied an alternate basis to support the warrantless seizure and search of the vehicle" [*Id.*].

### A. The Defendant's Objection to the Magistrate Judge's Conclusion Regarding the Duration of the Stop

With respect to the determination that there was a reasonable basis for detaining the defendant beyond the time required to issue a traffic citation for speeding, the defendant specifically objects that the magistrate judge erred in relying upon the "five circumstances" set forth in the R&R [*Id.*].

Regarding the first circumstance, the defendant argues that Trooper Smith never stated he was relying upon any information about a drug investigation or a Title III wiretap to justify the stop [Doc. 331]. Rather, the defendant argues, Trooper Smith's sole basis for the stop was his observation of the defendant speeding [*Id.*]. He therefore argues that Magistrate

Judge Shirley erred in finding that Trooper Smith, in stopping the vehicle, was aware that the defendant was the subject of a Title III wiretap [*Id.*].

Magistrate Judge Shirley did make this finding. Rather, he determined that there was reasonable suspicion that criminal activity was afoot because Trooper Smith knew that the defendant and his vehicle were the subject of a federal wiretap investigation [Doc. 328]. His determination was based on Sixth Circuit case law, which determined that being the subject of a Title III wiretap was a significant factor in establishing "the requisite reasonable suspicion that the defendants were involved in the transportation of drugs" [*Id.* (citing *Torres-Ramos*, 536 F.3d at 553)]. The defendant has not argued, nor does the Court find, that reliance on such case law was in error. Therefore, the Court overrules the defendant's objection to the magistrate judge relying upon the first circumstance.

Regarding the second circumstance, the defendant argues "[a]n officer's reliance upon the manner of speaking of a person that he has just met has to be suspect" [Doc. 331]. Further, the defendant submits that Trooper Smith had never met the defendant, nor did he know whether the defendant was always friendly or talkative, and "[s]ome people simply are" [*Id.*]. Thus, he argues, such circumstance should be given minimal effect in the overall consideration of the totality of the circumstances [*Id.*].

Trooper Smith testified that he found the defendant talkative and overly friendly and became suspicious of the defendant [Doc. 328]. Magistrate Judge Shirley was correct in considering this circumstance in light of case law finding a defendant's "over talkativeness" a factor when considering whether the totality of the circumstances supported reasonable

14

suspicion for the defendant's continued detention. *See Jimenez*, 2009 WL 2905933, at *14. Moreover, an officer's personal training and experience are relevant to the reasonable suspicion analysis. *Torres-Ramos*, 536 F.3d at 552. The defendant's objection to the magistrate judge relying upon the second circumstance, therefore, is overruled.

Regarding the third circumstance, the defendant argues that it was error for the magistrate judge to rely upon the fact that the defendant took longer than usual to locate his driver's license, registration, and proof of insurance because Trooper Smith admitted that it was not unusual for people to be nervous upon a traffic stop and to take significant periods of time in locating such documents [Doc. 331]. Further, the defendant submits that "very few people" have those documents together in one place [*Id*.]

Magistrate Judge Shirley properly considered this circumstance. The finding was based upon Trooper Smith's training and experience, specifically that the defendant took longer than the average person to locate the requested documents, which could be an indicator of criminal activity [Doc. 328]. Thus, the Court overrules the defendant's objection to the magistrate judge relying upon the third circumstance.

Regarding the fourth circumstance, the defendant argues that there was "much testimony about this factor, which revealed that the officer's testimony regarding his 'concern for the female passenger' was not credible" [Doc. 331]. He contends that, had the trooper been concerned about the female passenger, "he would have taken an interest in her long before taking the time to check everyone's identification and write a [c]itation" [*Id*.]. Further, the defendant points out that the video reveals that the trooper did not prevent the

car from being driven off by one of the passengers by taking the key, nor did he go back to check on the female passenger until after he had written the warning, almost twenty minutes after the stop [*Id.*]. Thus, he argues that the magistrate judge's reliance on this circumstance "cannot be justified, due to its incredibility" [*Id.*].

The Court also finds this objection without merit. The defendant essentially argues that the trooper should not be deemed credible given some of his actions. Magistrate Judge Shirley, however, observed Trooper Smith in person and heard his testimony, and credited it as truthful [Doc. 328]. The defendant has provided no reason to believe it was not. Therefore, the Court overrules the defendant's objection to the magistrate judge relying upon the fourth circumstance.

Finally, regarding the fifth circumstance, the defendant argues that the magistrate judge concluded that "no one ever travels long distances at night" [Doc. 331]. The defendant further contends that "Georgia is a long state, north to south, and travel from the place of the stop in Loudon County, Tennessee to Southern Georgia could easily have taken until the following morning to arrive" [*Id.*]. Thus, he argues the circumstance should be given "faint consideration" [*Id.*].

Magistrate Judge Shirley finds that the trooper's suspicions were aroused when the defendant explained that he was stopping in Georgia to see his uncle given the time of the traffic stop [Doc. 328]. Relying upon case law, he finds such could provide an indicia of reasonable suspicion [*Id.*]. The defendant's subjective proposition that it is not unusual to travel in the middle of the night to surprise one in the early morning hours does not convince

16

the Court that the magistrate judge erred in relying upon this circumstance. Therefore, the Court overrules the defendant's objection to the magistrate judge relying upon the fifth circumstance.

> B. **The Defendant's Objections to the Magistrate Judge's Conclusions that the Consent to the Search was Voluntary and Constitutional and that the Drug Dog's Positive Alert Supplied an Alternate Basis to Support the Warrantless Seizure and Search of the Vehicle**

The defendant does not provide much argument regarding his objection to Magistrate Judge Shirley's findings that the consent to the search was voluntary and constitutional and that the drug dog's positive alert supplied an alternative basis to support the warrantless seizure and search of the defendant's vehicle [Doc. 331]. At best, he argues "the fact that the drug dog sniff and the consent occurred after the legitimacy of the stop makes them and the resulting seizure unconstitutional" [*Id*.]. As the Court agrees with the magistrate judge that the duration of the stop was lawful, this argument lacks merit. The defendant's objections, therefore, are overruled.

In sum, after reviewing the R&R, the underlying briefs, the relevant law, the defendant's objections to the R&R, and the government's response to the defendant's objections, the Court determines that the magistrate judge fully and appropriately considered the defendant's arguments in support of his motion to suppress. Further, the Court agrees with the magistrate judge's analysis and findings.

## V. Conclusion

For the reasons given above, the Court **OVERRULES** the defendant's objections [Doc. 331] to Magistrate Judge Shirley's R&R and **ACCEPTS IN WHOLE** the R&R [Doc. 328]. The Defendant's Motion to Suppress No. 6 [Doc. 210] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
